UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

LAURA TORAN,                                                      Docket No.

              Plaintiff,

                                                                 VERIFIED
       -against-                                                 COMPLAINT

THE COUNTY OF NASSAU, SERGEANT GIRON,                            JURY TRIAL DEMANDED
Individually and in his Official Capacity as a Sergeant in
the Nassau County Police Department, and POLICE
OFFICER DOLAN, Individually and in her Official
Capacity as a Police Officer in the Nassau County
Police Department,

              Defendants.
-------------------------------------------------------------------X

       Plaintiff, LAURA TORAN , by her attorney Timothy P. Devane, Esq.,

complaining of the defendants, alleges, upon information and belief, as

follows:

                                    I

                       JURISDICTION AND VENUE

1.     This action is brought to remedy wrongful actions under the color of state law

in violation of 42 U.S.C. §§1981a, 1983 and 1985, and 28 U.S.C. §1345 and the First,

Eighth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is

based on 42 U.S.C. §1988, 28 U.S.C. §1331 and 1343(a)(1)(2)(3).  The amount of

damages in controversy is in excess of Fifty Thousand ($50,000.00) Dollars, exclusive of

interest in costs.

2.     Supplemental jurisdiction pursuant to 28 U.S.C. §1367 is sought to remedy

violations of the New York State Constitution.

3.     Injunctive and declaratory relief, damages, attorneys fees and other appropriate

legal and equitable relief are sought pursuant to 42 U.S.C. §§1981, 1983, 1985 and 1988, 28 U.S.C. §§2201 and 2202, Rule 57 of the Federal Rules of Civil Procedure, and the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

4.      As the Defendants' headquarters are in and many of the unlawful practices complained of herein occurred within the Eastern District, venue is proper in this District pursuant to 29 U.S.C. §1391(b).

II

ADMINISTRATIVE PROCEEDINGS

5.      That the Plaintiff LAURA TORAN did on or about the 8th day of March, 2021 serve upon the defendant THE COUNTY OF NASSAU a Notice of Claim which conformed to the requirements of Section 50(e) of the General Municipal Law.

6.      That no request for a 50H hearing has been made by the defendant THE COUNTY OF NASSAU, and is therefore deemed waived.

7.      That more than thirty days have elapsed since the service of said Notice of Claim upon the defendants and the defendants have refused to compromise this action.

8.      Plaintiff contends furthermore that the restrictions of the General Municipal Law are not applicable to this action, as this action is based on Plaintiff's federal civil rights claims.

III

PARTIES

9.      On the date of the incident the Plaintiff LAURA TORAN was a resident of the State of New York, County of Nassau.  Immediately after the incident, Plaintiff moved to the State of New York, County of Suffolk, where she still resides.

10.   At all times hereinafter mentioned, the defendant THE COUNTY OF NASSAU was and still is, a municipal corporation.

11.   At all times hereinafter mentioned, the Nassau County Police Department was and still is an agency of the defendant THE COUNTY OF NASSAU.

12.   That the cause of action alleged herein arose in the County of Nassau, State of New York.

13.   That this action falls within one or more of the exemptions set forth in CPLR §1602.

14.   That the defendants SERGEANT GIRON and POLICE OFFICER DOLAN were and still are agents, servants, and employees of the defendant THE COUNTY OF NASSAU.  Defendants SERGEANT GIRON and POLICE OFFICER DOLAN are sued individually and in their official capacities.

15.   At all relevant times, defendant THE COUNTY OF NASSAU authorized and empowered the defendants SERGEANT GIRON and POLICE OFFICER DOLAN to attend to their duties as Sergeant/Police Officer respectively and thus constituted them Sergeant/Police Officer respectively, with the Nassau County Police Department, an agency of the defendant THE COUNTY OF NASSAU.

16.   That upon information and belief, at all times hereinafter mentioned, defendants SERGEANT GIRON and POLICE OFFICER DOLAN were acting within the scope of their employment as constituted Sergeant/Police Officer of the Nassau County Police Department, an agency of defendant THE COUNTY OF NASSAU.  At all times relevant herein, the individual defendants herein were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and

officers of defendant Nassau County Police Department, an agency of THE COUNTY

OF NASSAU and otherwise performed and engaged in conduct incidental to the

performance of their lawful functions in the course of their duties.  They were acting for

and on behalf of the Nassau County Police Department, an agency of the defendant THE

COUNTY OF NASSAU at all times relevant herein with the power and authority vested

in them as officers, agents and employees of Nassau County Police Department, an

agency of the defendant THE COUNTY OF NASSAU, and incidental to the lawful

pursuit of their duties as officers, employees and agents of Nassau County Police

Department, an agency of the defendant THE COUNTY OF NASSAU.

17.     Defendant THE COUNTY OF NASSAU is a municipal entity created and

authorized under the laws of the State of New York.  It is authorized by law to maintain a

police department which acts as its agent in the area of law enforcement and for which it

is ultimately responsible.  The defendant THE COUNTY OF NASSAU assumes the risks

incidental to the maintenance of a police force and the employment of police officers as

said risk attaches to the public consumers of the services provided by the defendant THE

COUNTY OF NASSAU.

IV

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

18.     On December 16, 2020 Claimant and her mother were informed by SERGEANT

GIRON of the Special Victims Unit that the Nassau County Police Department would not

be moving forward with any further investigations into the Plaintiff's claim that she was

raped on November 22, 2017.  This determination was the culmination of a pattern of

willful refusal by defendant THE COUNTY OF NASSAU and police officers to

administer the laws of the State of New York to aid the Plaintiff, the victim of a rape involving multiple individuals, and to cover up the actions of the police officer who responded to the 911 call on the date of the rape.

19.     Plaintiff was raped on November 22, 2017 between approximately 11am and 5pm while her parents were attending a closing for the sale of the property located at 10 Charles Street, Merrick, New York 11566 where the Plaintiff had lived with her family for many years.  In November 2019 Plaintiff came forward for the first time since she made a 911 call on the date of the rape.  The Plaintiff's mother Deborah Toran went to Gem Pawn Brokers in Merrick and noticed a sign that said "we pawn cars".  The Plaintiff's mother and father agreed to pawn the 2007 Honda Civic owned by her husband because the Plaintiff's parents needed an infusion of cash.  The man that pawned the car on behalf of Gem Pawn Brokers was named Joel Cohen.  He was the one who introduced the Plaintiff's parents to Jerry Yedid, who agreed to buy the Plaintiff's parents' home for cash.  Since the Plaintiff's parents had already purchased another property in which they were already planning to move into, and Plaintiff's father and brother were already staying at the other house, they were interested in selling the property to a cash buyer.

20.     Theodore Pruett was a tenant of the Plaintiff's parents who resided in the back of the house.  He had been served with a thirty day notice to vacate the premises prior to the closing date by Cheryl Asman who was staying with Plaintiff's mother as s guest, but was refusing to leave until he came to an agreement with the incoming buyer.  The incoming buyer Jerry Yedid and his son Jake Yedid had been in contact with Theodore Pruett prior to the closing date.  Although Plaintiff and her parents were not aware of any

promises made to Theodore Pruett prior to the closing, the incoming buyer apparently agreed to pay Theodore Pruett the sum of $5,733.00 to vacate the premises after the closing took place. Jerry Yedid then got this money back at the closing, despite the objections of Plaintiff's parents, who had not been notified that Jerry Yedid was planning to do this. Jerry Yedid and his sons, including Jake Yedid had been observed stopping by the house prior to the closing date to check on the house and to speak to Theodore Pruett. Plaintiff's mother saw Jerry Yedid give something to Theodore Pruett prior to the date of the closing. On the date of the closing, Jerry Yedid dispatched his son to the property he was purchasing from Plaintiff's parents, allegedly to make sure that the tenant was still on schedule to move out, although Plaintiff now believes that this was a pretext to go to the house and participate in the rape, due to the events that transpired that day. The tenant Theodore Pruett was an individual who received disability payments as an armed services veteran, and who panhandled for extra money, but Plaintiff's parents and Plaintiff were never aware of any criminal behavior by Mr. Pruett that made them think he was capable of committing rape. Plaintiff's father Larry Toran worked with Theodore Pruett's father, Ben Pruett, at Emory Air Freight in Jamaica, Queens and therefore the Plaintiff's parents did not see the need to do a background check on Theodore Pruett prior to renting out the back of the house to him, which had a separate entrance.

21.      On November 22, 2017 between approximately 11 am and 5 pm the Plaintiff was violently raped by Theodore Pruett and other individuals. Plaintiff was lawfully at her parents' home, who she lived with her entire life, when her parents were attending a closing for the sale of the house at their closing attorney's office located at 31 Greene Avenue, Amityville, New York 11701. Cheryl Asman, who was a former high school

classmate of the Plaintiff's mother, had been staying at the house since she had visited

Long Island from her home in Florida in September 2017 and was at the house with the

Plaintiff that day assisting Plaintiff with packing her belongings to be ready to move upon

completion of the closing. The Plaintiff's mother had opened up a business in June 2017

at 6 Beach Drive, which was within walking distance of the house, and Ms. Asman had

been helping out with the business since she had been staying with the Plaintiff's family.

As soon as Plaintiff's parents drove away from the house to attend the closing, Theodore

Pruett knocked on the front door, but the Plaintiff did not answer the door. However,

there is a side door to enter the house in what is known as a mud room, which is adjacent

to the kitchen table which is part of Plaintiff's part of the house. Jake Yedid had already

arrived at the house on behalf of Jery Yedid, who purchased the house for cash. Plaintiff

heard Jake Yedid speaking with Theodore Pruett outside near the side door. Theodore

Pruett and Jake Yedid then opened the kitchen door by the mud room using either a credit

card or a device to get through the lock that was on the door. The Plaintiff was in the

kitchen when the door was opened. Theodore Pruett immediately grabbed the Plaintiff

by the throat and dragged the Plaintiff into his bedroom in the back of the house, as he

was still residing there as the tenant of the Plaintiff's parents. In addition to Jake Yedid,

who is white, three African-American men were present and one of them had a gun.

Based on Plaintiff's mother being aware that Theodore Pruett was abusing his

medication, and based on the conversations heard by Plaintiff that day, Plaintiff believes

that these three individuals were drug dealers of Theodore Pruett. Theodore Pruett raped

the Plaintiff vaginally and anally, and stuck his fingers inside the Plaintiff's vagina. Prior

to the rape the Plaintiff was a virgin. Cheryl Asman ran upstairs into the Plaintiff's

bedroom and did not call 911 or try to get help in any way. The three African-American men held the Plaintiff down while she was raped by Theodore Pruett. When Theodore Pruett completed his initial rape, Jake Yedid then raped the Plaintiff in the downstairs bathroom. The Plaintiff then ran upstairs to her bedroom in an effort to get Cheryl Asman to help her. The men all ran upstairs following Plaintiff into the Plaintiff's bedroom. The Plaintiff was then held down by the three African-American men while Theodore Pruett raped the Plaintiff again. Cheryl Asman then took an active role by using a pen to penetrate the Plaintiff's vagina and anus while the Plaintiff was still being held down by the three African-American men. One of the African-American men then gave the Plaintiff a gun so that she could kill herself, but at some point the Plaintiff was able to kick Theodore Pruett in the scrotum and run out of the house and ran to Little Cucina Restaurant on Merrick Road, which is within walking distance of the Plaintiff's house. Once she arrived at the Restaurant the Plaintiff called 911 from her cell phone.

22.     Police Officer Dolan, a white female likely in her 30's, arrived at the restaurant and told the Plaintiff, "We can't help you because of your mother". She then took the Plaintiff back to the house, where Theodore Pruett and Cheryl Asman were still located, although the other individuals had left. When Police Officer Dolan dropped off the Plaintiff at her house she gave her a blank piece of paper and said, "Here is your report". She then laughed at the Plaintiff and said, "Fuck you" and drove off. Theodore Pruett and Cheryl Asman were still at the house and laughed at the Plaintiff after observing the police officer's behavior towards the Plaintiff. Traumatized by the rape and then the failure of Police Officer Dolan to come to her assistance, Plaintiff shut down and did not report the rape to anyone else for two years. During the ensuing two years, Plaintiff's

behavior changed and she grew increasingly confrontational with her parents. Realizing something was wrong, they continued to inquire what was the matter with her until she finally admitted to being raped on the date and locations described herein. Upon hearing this news her parents, law abiding citizens, were devastated and sought out police assistance, never thinking that previous disputes with the Seventh Precinct over relatively minor incidents would be used against the Plaintiff. Cheryl Asman has had phone conversations with Plaintiff in which Ms. Asman has told the Plaintiff not to say anything about what happened that day. After learning of Jake Yedid's participation in the rape when Plaintiff finally told her parents what happened, Plaintiff's mother called Jerry Yedid and told him that his son did and his response was to laugh and say, "Did she get pregnant?"

23.   The previous incidents involving Plaintiff's family and the Seventh Precinct in Nassau County include:

a.   On May 6, 2016 the Plaintiff's mother Deborah Toran asked to make a vandalism report because in the middle of the night while the Plaintiff and her parents lived in Merrick the Plaintiff was woken up by men speaking and doing something to her father's car. The next morning the Plaintiff told her mother so her mother called the police. When police officers arrived, including Officer Gerwin, they refused to give her a vandalism report. The Plaintiff's parents learned that the fuse harness had been removed from the car and the Plaintiff's mother gave the estimate to the precinct in an effort to obtain a vandalism report so they could notify their insurance company, but the police still refused to provide a report. In response to the Plaintiff's mother's complaint, Lieutenant Byrnes told Plaintiff's mother that if she calls again he will send an

ambulance and police car to take her to Nassau Community Medical Center.

b.  Subsequently the Plaintiff's mother got a call from the Nassau County Seventh Precinct stating that they were coming over with the vandalism report. Soon after a Nassau County police officer arrived with a plain clothes person and rang the door bell. The Plaintiff's mother opened her window and asked who the plain clothes man was and the officer responded that it was an "observer". The Plaintiff's mother asked for what purpose? The officer then asked if they could come on to the property, and the Plaintiff's mother agreed. They walked around the house a little bit and then got back in their vehicle. The plain clothes man named Gunther then gave the Plaintiff's mother a number of violations and he and then officer then laughed and drove away. On May 13, 2016 the police were called again regarding the vandalism complaint and the police acted as if they wanted to arrest the Plaintiff's mother. After the police remained outside the house for two hours, the police left without taking a report and without making any arrest. During that exchange, Theodore Pruett was asked if he had keys to the house and he said "no". As a result of this incident, the Plaintiff's mother complained about the treatment she received as a result of this incident and upon information and belief, Lieutenant Byrnes was disciplined.

c.  On December 21, 2016 the Plaintiff's mother was driving home and stopped for three ducks that were crossing the street. A woman named Kathy Tener thought that the Claimant's mother was stopping in front of her house and started videotaping her with her phone. The Plaintiff's mother and Ms. Tener once had a verbal dispute in the Merrick Public Library because Ms. Tener had been laughing at the Plaintiff and her Mother, but that was 20 years prior to this incident. The Plaintiff saw Ms. Tener

videotaping Plaintiff's mother and gave Ms. Tener the middle finger, and then got out the vehicle and walked to Plaintiff's house, which was within walking distance. The Plaintiff's mother did not know why the Plaintiff had gotten out of the car but before she could find out two police vehicles appeared and blocked Plaintiff's mother. When Plaintiff's mother demanded to know what was happening she was told that "you are Harassing Kathy". The Plaintiff's mother stated she doesn't know what they are talking about and said she had to visit her husband who was in the hospital. No summonses were issued as a result of this incident. Upon information and belief Kathy Tener has friends in the Seventh Precinct.

     d.  In 2017 there were also several minor incidents in which police acted in a manner consistent with a precinct-wide agenda against Plaintiff's mother and her family.

24.    Once the Plaintiff came forward with her allegations for the first time since she made the 911 on the date of the rape, Plaintiff's mother asked the police officials at the Nassau County Special Victims' Unit that a female Detective speak to the Plaintiff, because she knew That Plaintiff's daughter would be reluctant to speak to a male Detective about the rape.The Plaintiff was introduced to Detective Ramos, a male who was designated the Lead Detective on November 6, 2019. Instead of being sensitive to this request, Lead Detective Ramos refused and stated that he is the one that she has to speak to. Although the Plaintiff gave statements to the police, she did not feel comfortable talking with a male Detective and therefore was reluctant to provide all the details which are set forth in this Complaint. Some time after, Detective Hoovert, a female, was briefly involved, and called Plaintiff's mother off-duty to express empathy for her daughter. When Defendant Sergeant Giron learned this, he first tried to deny it

took place and then prevented Detective Hoovert from having any involvement in the investigation. Plaintiff has told Defendants that she made a 911 call on the date of the rape, but police officials have denied that she made a 911 call, in an effort to cover up the actions of Defendant Police Officer Dolan in failing to come to the Plaintiff's aid on the date of the rape. Although the Plaintiff gave statements to the police, she was never provided a female detective although requested by Plaintiff's mother until Detective Ramos said it was allowed. Plaintiff still has the phone that was in her possession that day, which she knows was grabbed from her but she fought to get it back; therefore Theodore Pruett's fingerprints may be on the phone. However, no effort was made by the Nassau County Police Department to investigate this evidence. Although Defendant Police Officer Dolan refused to take the Plaintiff to the hospital that day, the Plaintiff's fallopian tubes were damaged as a result of the rape. The Plaintiff was a virgin prior to the rape, so therefore any damage to the fallopian tubes, which are indicating of an infection caused by Theodore Pruett's dirty fingers when he raped the Plaintiff, could have been some evidence that could have been used by the Nassau County Police Department in their investigation. In letting the Plaintiff's mother know they were not pursuing charges on December 16, 2020, Defendant Sergeant Giron said "we believe your daughter but we do not have any physical evidence". Upon information and belief, Theodore Pruett has a violent history. Upon information and belief Defendant Sergeant Giron told Detective Ramos and Detective Hoovert to not speak with the Plaintiff's mother. Furthermore, Defendant Sergeant Giron told Plaintiff's mother that he notified the precincts in Nassau County not to talk to her anymore and said that "everyone knows that Laura was raped", implying that HIPAA laws were violated in informing the

precincts of the Plaintiff's condition.

> AS AND FOR A FIRST CAUSE OF
> ACTION AGAINST DEFENDANTS:(Monell Claim
> against the Municipal (County) Defendant:

25.     Based on the forgoing, Defendants had probable cause to believe a crime had

been committed against Plaintiff, yet intentionally and maliciously refused to assist

Plaintiff.

26.     Defendants had no reason to believe that Plaintiff was lying, yet failed to take

action to assist her, with Defendant Police Officer Dolan claiming that she didn't like

Plaintiff's mother.

27.     The Defendants' actions were malicious, wanton and willful, and were taken in

callous disregard as to whether Plaintiff's rights as a rape victim would be violated, and

were done because the police officer did not like the Plaintiff's mother.

28.     Plaintiff claims that the violations of Plaintiff's rights by the defendants constitute

violations of 42 U.S.C. §§1981, 1983 and 1985 in that the Defendants deprived Plaintiff

of her fundamental civil rights secured by the United States Constitution, including the

First, Eighth and Fourteenth Amendments; that Defendants had no legal justification in

failing to investigate and arrest, detain and prosecute Plaintiff's rapists and accomplices;

that the Defendants conspired against Plaintiff to prevent her claims from being

investigated; and that the malicious actions against Plaintiff, were violative of the most

basic human and civil rights afforded citizens of the State of New York and of the United

States.  Defendants acted with a knowing, willful, wanton, grossly reckless, unlawful,

unreasonable, unconscionable and flagrant disregard of Plaintiff's rights, privileges,

welfare and well-being. and the New York State Constitution.

29.     Injunctive and declaratory relief, damages, attorneys fees and other appropriate legal and equitable relief are sought pursuant to 42 U.S.C. §1981, §1983, §1985 and §1988, and the First, Fourth, Eighth and Fourteenth Amendments to the United States Constitution.

30.     At all times material to this complaint, the defendant THE COUNTY OF NASSAU, acting through their police departments, had in effect de facto policies, practices, and customs that were a direct and proximate cause of the unconstitutional conduct of defendants SERGEANT GIRON and POLICE OFFICER DOLAN.

31.     These de facto policies, practices and customs include, inter alia: (1) the failure to properly screen, supervise, discipline, transfer, counsel, and/or otherwise control police officers engaged in sexist profiling against women who claim they were raped, in particular Plaintiff herein and allowing a culture to exist where local precincts can retaliate against citizens they don't like.

32.     Upon information and belief, the defendant THE COUNTY OF NASSAU failed to effectively screen, hire, supervise and discipline their police officers, including the defendant police officers herein, for sexist bias, particularly with respect to the treatment of women who claim they were raped, lack of truthfulness, and for their failure to protect citizens after they have been raped, thereby permitting and allowing the defendant police officers herein to be in a position to ignore complaints of rape if they don't like the complainant or her family.

33.     Upon information and belief, the defendant THE COUNTY OF NASSAU negligently retained defendants SEARGEANT GIRON and POLICE OFFICER DOLAN.

34.     Upon information and belief, the defendant THE COUNTY OF NASSAU

maintained an inadequate structure for risk containment and stress management relative to its police officers, and failed to create proper means of containing such risk and managing such stress. Inter alia, the structure was deficient, at the time of selection of police officers and thereafter during their employment, in its ability to evaluate and exchange information within the command structure about the performance of individual police officers; in its training of supervisory personnel to effectively and adequately evaluate the performance of an officer; and in its ability to otherwise put the command structure on notice that an individual or individuals were at significant levels of risk to the public at large or to specific segments thereof. The effect of this was to permit police officers of the department to function at levels of significant and substantial risk to the public in general and to female rape victims in particular.

35.     As a result of the foregoing conscious policies, practices, customs and/or usages, defendant THE COUNTY OF NASSAU has permitted and allowed the employment and retention of individuals as police officers whose individual circumstances place the public or segments thereof at substantial risk of being the victims of rape without consequences to the perpetrators. Such policies, practices, customs and/or usages are a direct and proximate cause of the conduct alleged herein and otherwise a direct and proximate cause of the injuries to the plaintiff herein.

36.     The conduct of the responding officer on the date of the rape occurred while she was on duty and during the course of the scope of her duties and functions as a Nassau County Police Officer, and while acting as agent and employee of the defendant THE COUNTY OF NASSAU, and as a result Defendant THE COUNTY OF NASSAU is liable to the Plaintiff pursuant to the state common law doctrine of respondeat superior.

37.     Plaintiff also claims that the Defendant's actions against her constitute intentional and/or negligent infliction of emotional distress in that the actions of the Defendants are outrageous and have caused Plaintiff to sustain emotional distress.

38.     Plaintiff claims that as a government body, the actions and inaction of the Defendants constituted violations of Plaintiff's civil rights under New York State and federal law, including 42 U.S.C. §§1981, 1983 and 1985 and 28 U.S.C. §1345.

39.     As a result of the foregoing, Plaintiff suffered mental anguish and depression as a result of the failure to investigate and prosecute her allegations, suffers from anxiety and mental anguish, intentional infliction of emotional distress and negligent infliction of emotional distress, including flashbacks, and has experienced reprisals in the form of ominous visits made to Plaintiff's home, and fears future reprisals from the officers involved in her investigation and was otherwise damaged in the sum of FIVE MILLION and 00/100 ($5,000,000.00) DOLLARS.

AS AND FOR A SECOND CAUSE OF ACTION
AGAINST ALL DEFENDANTS:

40.     Plaintiff repeats and realleges the allegations set forth in paragraphs numbered "1" through "39" of this Complaint with the same force and effect as if more fully set forth herein.

41.     By the actions described above, each and all of the defendants jointly and severally, have committed the following wrongful acts against the plaintiff, which are tortuous under the laws of the State of New York:

     a.     negligence in causing emotional injuries to the plaintiff;

     b.     abuse of power;

     c.     intentional infliction of emotional distress upon plaintiff, in that the

defendants intended to and did cause the plaintiff severe emotional distress, and the defendants' acts were outrageous in the extreme and utterly unacceptable in a civilized society;

     d.     negligent hiring, screening, retention, supervision and training of defendant police officers by defendant THE COUNTY OF NASSAU and Nassau County Police Department.

     e.     conspiracy by the defendants to commit all of the above acts;

     f.     violation of rights otherwise guaranteed to the plaintiff under the laws and Constitution of the State of New York.

42.     The foregoing acts and conduct of the defendants were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed her by the laws and Constitution of the State of New York.

43.     As a result of the foregoing, Plaintiff suffered mental anguish and depression as a result of the failure to investigate and prosecute her allegations, suffers from anxiety and mental anguish, intentional infliction of emotional distress and negligent infliction of emotional distress, including flashbacks, and has experienced reprisals in the form of ominous visits made to Plaintiff's home, and fears future reprisals from the officers involved in her investigation and was otherwise damaged in the sum of FIVE MILLION and 00/100 ($5,000,000.00) DOLLARS.

     WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment:

     (a) declaring that the acts and practices complained of herein are in violation of 42 U.S.C. §§ 1981, 1983 and 1985 and the First, Eighth and Fourteenth Amendments to the United States Constitution, and the New York State Constitution;

(b) enjoining and permanently restraining these violations of 42 U.S.C. §§1981, 1983, 1985 and the First, Eighth and Fourteenth Amendments;

(c) directing defendants to take such affirmative action as is necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff;

(d) awarding Plaintiff the costs of this action together with reasonable attorneys' fees, as provided by 42 U.S.C. §1988;

(e) directing Defendant THE COUNTY OF NASSAU to pay Plaintiff LAURA TORAN compensatory damages and damages for her injuries, psychological trauma, mental anguish and humiliation for the First Cause of Action, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) with interest from March 8, 2021;

(f) directing the Defendants jointly and severally to pay Plaintiff LAURA TORAN compensatory damages and damages for her injuries, psychological trauma, mental anguish and humiliation for the Second Cause of Action, in the amount of FIVE MILLION DOLLARS ($5,000,000.00) with interest from March 8, 2021;

(f) directing Defendants to pay punitive damages;

(g) directing Defendants to pay attorneys' fees; and

(h) granting such other and further relief as this Court deems necessary and proper.

Dated:  Lindenhurst, New York
        August 27, 2021

Yours, etc.

TIMOTHY P. DEVANE
Attorney at Law
Attorney for Plaintiff
LAURA TORAN
9 East Hoffman Avenue, Suite C
Lindenhurst, New York 11757
(646) 573-4985

## VERIFICATION

STATE OF NEW YORK)
COUNTY OF SUFFOLK) ss.:

LAURA TORAN, being duly sworn, deposes and says:

I am the Plaintiff in the proceeding herein.  I have read the annexed

## COMPLAINT

know the contents thereof, and the same are true to my knowledge, except those matters
therein which are stated to be alleged upon information and belief, and as to those matters
I believe them to be true.  My belief as to those matters therein not stated upon
knowledge, is based upon facts, records, and other pertinent information contained in my
personal files.

Dated:  Lindenhurst, New York
        August 27, 2021

LAURA TORAN

Sworn to before me this 27 th,
day of August, 2021

Notary Public

JOSEPH C. DOMHAN
Notary Public, State of New York
No. 01DO6386895
Qualified in Suffolk County
Commission Expires February 04, 2023